**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran B. Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
Andrew C. Burnquist (SBN 359076)
*aburnquist@bakerlaw.com*
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: 310.820.8800
Facsimile: 310.820.8859

*Attorneys for Defendant*
CKE RESTAURANTS HOLDINGS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

MELVIN COLEMAN, MEGAN PARKS, and SUSAN COLBY, as individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

CKE RESTAURANTS INC.,

Defendant.

Case No.: 3:26-CV-04610-JD

[*Assigned to Hon. James Donato*]

**DEFENDANT CKE RESTAURANTS HOLDINGS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[*Filed concurrently with Declaration of Max Scholz; Declaration of Bethany G. Lukitsch; and [Proposed] Order*]

| | |
|---|---|
| **Date:** | August 20, 2026 |
| **Time:** | 10:00 a.m. |
| **Dept.:** | Courtroom 11, 19th Floor |
| **Action Filed:** | May 15, 2026 |

**TO THE COURT, PLAINTIFFS, AND THEIR COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on August 20, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable James Donato, in Courtroom 11 of the above-entitled Court located on the 19th Floor of the Phillip Burton Federal Building, at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant CKE Restaurants Holdings, Inc., erroneously named as CKE Restaurants Inc. ("CKE"),[1] will and hereby does move to dismiss with prejudice the Class Action Complaint ("Complaint") of Plaintiffs Melvin Coleman, Megan Parks, and Susan Colby ("Plaintiffs") (the "Motion").

This Motion is made pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiffs fail to allege sufficient injury to confer Article III standing. Separately, Plaintiffs' Complaint should also be dismissed pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) as it fails to allege sufficient facts to plead: (1) invasion of privacy or intrusion upon seclusion; (2) a violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a); (3) a violation of CIPA, Cal. Penal Code § 638.51; (4) fraud, deceit and/or misrepresentation; and (5) unjust enrichment.

This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declarations of Max Scholz and Bethany G. Lukitsch, all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

Dated: July 14, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
Bethany G. Lukitsch
Kamran B. Ahmadian
Andrew C. Burnquist

*Attorneys for Defendant*
CKE RESTAURANTS HOLDINGS, INC.

[1] CKE Restaurants, Inc. merged with CKE Restaurants Holdings, Inc. over a decade ago.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS


I. INTRODUCTION ....1

II. STATEMENT OF ISSUES TO BE DECIDED ....2

III. BACKGROUND ....2

IV. LEGAL STANDARD....3

V. ARGUMENT....4

A. The Complaint Should Be Dismissed Pursuant To Rule 12(b)(1) Because Plaintiffs Fail to Establish Article III Standing....4

1. *Plaintiffs Have Not Alleged a Concrete Privacy Injury.*....4

2. *Plaintiffs Have Not Alleged Any Concrete Injury.*....6

B. The Complaint Should Be Dismissed Because Plaintiffs' Claims Fail to Meet the Heightened Pleading Standard of Rule 9(b). ....7

C. Plaintiffs' Common-Law Privacy Claims Fail (Counts I and II)....9

D. Plaintiffs' CIPA Section 631(a) Wiretapping Claim Fails (Count III)....10

E. Plaintiffs' CIPA Section 638.51 Pen Register Claim Fails (Count IV)....12

F. Plaintiffs' Common-Law Fraud/Misrepresentation Claim Fails (Count V)....14

G. Plaintiffs' Unjust Enrichment Claim Fails (Count VI). ....14

VI. CONCLUSION....15


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....... 3

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ....... 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....... 3, 14

*Boris v. Wal-Mart Stores, Inc.*,
35 F. Supp. 3d 1163 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016) ....... 9

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....... 8, 11, 12

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....... 8

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ....... 4

*California Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) ....... 14

*Cherkin v. PowerSchool Holdings, Inc.*,
2025 WL 844378 (N.D. Cal. Mar. 17, 2025) ....... 14

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ....... 12

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) ....... 7

*Cooper v. Simpson Strong-Tie Co., Inc.*,
460 F. Supp. 3d 894 (N.D. Cal. 2020) ....... 8

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ....... 1, 10

*Davis v. Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020) ....... 5, 9

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) ....... 1, 7, 9


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Diaz v. Paramount Skydance Corp.*,
2026 WL 1090958 (C.D. Cal. Apr. 20, 2026) ....................5

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................10

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....................6

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) ....................14

*Ferry v. DF Growth REIT*,
2024 WL 5011949 (S.D. Cal. Dec. 6, 2024)....................3

*In re Gilead Sciences Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ....................3

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025)....................11

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................9, 10

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ....................6

*Hoey v. Sony Elecs. Inc.*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007) ....................15

*Hooked Media Grp. v. Apple Inc.*,
55 Cal. App. 5th 323 (2020) ....................14

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)....................6

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................10

*Jaeger v. Howmedica Osteonics Corp.*,
2016 WL 520985 (N.D. Cal. Feb. 10, 2016) ....................8

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024)....................11

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................11

*Lau v. Gen Digital Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ....................11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ..... 4

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..... 9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..... 3

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) ..... 6

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ..... 13

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) ..... 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ..... *passim*

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ..... 11

*Rodriguez v. Ink America Int'l Grp. LLC*,
2025 WL 4034985 (Cal. Super. Dec. 10, 2025) ..... 13

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) ..... 15

*Rosenow v. Facebook, Inc.*,
2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ..... 11

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) ..... 10

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ..... 6

*Silvia Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ..... 6

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ..... 12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..... 3

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..... 4

*In re USA Today Co., Inc. Internet Tracking Litigation*,
2026 WL 932655 (N.D. Cal. Apr. 6, 2026) ........................................................................6

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........................................................................11

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ........................................................12, 13, 14

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) ........................................................................7

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........................................................1, 4, 11

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023) ........................................................................4

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........................................................................9, 11, 12

**Statutes**

Cal. Pen. Code § 631 ........................................................................3, 10, 11, 12

Cal. Pen. Code § 632.01 ........................................................................13

Cal. Pen. Code § 638.50 ........................................................................13, 14

Cal. Pen. Code § 638.51 ........................................................................12

**Other Authorities**

Cal. Assemb. B. 929, 2015-2016 Reg. Sess. (Cal. Legis. Counsel's Dig. 2015). ........................13

Fed. R. Civ. P. 9 ........................................................................2, 7, 9

Fed. R. Civ. P. 12 ........................................................................ *passim*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case is the latest in a series of almost identical cookie-banner lawsuits filed by Gutride Safier, whose clients test companies' voluntary "cookie banners" and then assert boilerplate allegations claiming that the firing of any allegedly unwanted cookies amounts to "egregious privacy violations."[2] But despite its length, the Complaint is betrayed by a central defect common to cookie-cutter complaints: it lacks even the most basic details about Plaintiffs Melvin Coleman, Megan Parks, and Susan Colby (collectively, "Plaintiffs") and their alleged visits to Defendant CKE's publicly available Carl's Jr. website. No allegations specify *when* each Plaintiff visited, *which* pages they viewed, or *what* (if any) user content they input into the website when they visited. Critically, the Complaint also omits any facts regarding the devices or browsers Plaintiffs used, their cookie or privacy settings, whether any cookies were actually installed or triggered ***after*** Plaintiffs made their cookie banner selections, or what "personal information" or "private communications" were supposedly transmitted. These omissions are fatal under any federal pleading standard and require dismissal under Rule 12(b)(1), Rule 9(b), and/or Rule 12(b)(6).

First, Plaintiffs' allegations that they viewed and allegedly rejected certain data collection through selections made on an outdated cookie banner—one that is not alleged to be in current operation—are insufficient to establish a concrete privacy injury to support Article III standing. Under controlling Ninth Circuit precedent, particularly *Popa v. Microsoft Corp.*, even where the

[2] Gutride Safier has filed almost identical and lengthy complaints against other American companies since 2025: *Landry's, Inc.*, No. 4:26-cv-04608 (N.D. Cal. May 15, 2026); *FCA US LLC*, No. 3:26-cv-03899 (N.D. Cal. May 1, 2026); *Papa John's International, Inc.*, No. 4:26-cv-03504 (N.D. Cal. Apr. 24, 2026); *Dine Brands Global, Inc.*, No. 3:26-cv-03288 (N.D. Cal. Apr. 17, 2026); *WebMD LLC*, No. 4:26-cv-02920 (N.D. Cal. Apr. 3, 2026); *GoFundMe Inc.*, No. 3:26-cv-01217 (N.D. Cal. Feb. 9, 2026); *Harbor Freight Tools USA, Inc.*, No. 5:26-cv-01069 (N.D. Cal. Feb. 3, 2026); *Grocery Outlet, Inc.*, No. 5:26-cv-00964 (N.D. Cal. Jan. 30, 2026); *Kenneth Cole Productions, Inc.*, No. 3:26-cv-00771 (N.D. Cal. Jan. 23, 2026); *Peet's Coffee, Inc.*, No. 3:26-cv-00499 (N.D. Cal. Jan. 16, 2026); *Kohler Co.*, No. 4:25-cv-09633 (N.D. Cal. Nov. 7, 2025); *Deckers Outdoor Corp.*, No. 3:25-cv-09631 (N.D. Cal. Nov. 7, 2025); *NVIDIA Corp.*, No. 5:25-cv-09160 (N.D. Cal. Oct. 24, 2025); *Dave & Buster's Entertainment, Inc.*, No. 3:25-cv-08937 (N.D. Cal. Oct. 17, 2025); *Abercrombie & Fitch Co.*, No. 3:25-cv-07338 (N.D. Cal. Aug. 29, 2025); *PepsiCo, Inc.*, No. 3:25-cv-06929 (N.D. Cal. Aug. 15, 2025); *Torrid LLC*, No. 3:25-cv-06926 (N.D. Cal. Aug. 15, 2025); *Michaels Stores, Inc.*, No. 4:25-cv-05839 (N.D. Cal. Jul. 11, 2025); *Inspire Brands, Inc.*, No. 3:25-cv-03645 (N.D. Cal. Apr. 25, 2025); *Universal Music Investments, Inc.*, No. 5:25-cv-03095 (N.D. Cal. Apr. 4, 2025); *Hilton Worldwide Holdings Inc.*, No. 5:25-cv-01018 (N.D. Cal. Jan. 31, 2025), to name just some of that firm's recent lawsuits alleging privacy violations tied to a company's voluntary cookie banners.

collection is allegedly made without consent, the data collected ***must*** be "embarrassing, invasive, or otherwise private" to constitute a privacy injury. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). Because Plaintiffs do not identify any sensitive, private, or Plaintiff-specific information that they allegedly provided or was allegedly collected during their visits, they fail to allege a concrete privacy injury and lack Article III standing. The Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Second, even if Plaintiffs could establish standing, their substantive claims fail as a matter of law to meet federal pleading standards. Because the gravamen of the Complaint is that CKE made false representations, Plaintiffs were required—but failed—to plead their claims with the heightened specificity mandated by Rule 9(b). And even if Rule 9(b) did not apply, each claim also fails to state a plausible cause of action for the reasons detailed in Sections V.C-G below, and so the entire Complaint should be dismissed under Rule 12(b)(6). Moreover, because Plaintiffs cannot remedy their Complaint of its myriad failings, it should be dismissed with prejudice.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Do Plaintiffs allege an injury-in-fact to establish Article III standing?
2. Do Plaintiffs satisfy Rule 9(b) for each of their claims, which sound in fraud, or, alternatively, do Plaintiffs plausibly allege each cause of action against CKE?

## III. BACKGROUND

CKE operates www.carlsjr.com (the "Website"), where visitors can obtain information about Carl's Jr. restaurants, menu offerings, promotions, locations, loyalty and rewards programs, and can employ online ordering services for pickup and delivery. Compl., ¶ 28. Plaintiffs allege that at the unspecified time when they visited the Website it displayed a certain cookie banner (the "Challenged Banner") which stated: "By clicking 'Accept All Cookies', you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts." Compl., ¶ 32. The Challenged Banner further gave users the option to select "Accept All Cookies," "Reject All," or review the Website's "Cookie Settings." *Id.* Plaintiffs' theory is that, after they selected "Reject All," CKE caused cookies from Google, TikTok, and Snapchat (the "Third Parties") to fire and that unspecified user data was transmitted to the Third Parties. Compl.,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

¶¶ 3-6, 36-40, 42-65.

Based on the foregoing, Plaintiffs assert claims for invasion of privacy, intrusion upon seclusion, wiretapping in violation of CIPA section 631(a), use of a pen register in violation of CIPA section 638.51, common-law fraud, deceit and/or misrepresentation, and unjust enrichment. Compl., ¶¶ 119-195. Plaintiffs seek to represent a class of "[a]ll persons who browsed the Website in the State of California after clicking or selecting the 'Reject All' button in the Website's popup cookies consent banner." Compl., ¶ 111.

## IV. <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss any action for which it lacks subject matter jurisdiction. At the core of the Court's jurisdictional inquiry is Article III's standing requirement. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). The "'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560-61). "'The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Id*. Where, as here, a case is "at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Ferry v. DF Growth REIT*, 2024 WL 5011949, at *3 (S.D. Cal. Dec. 6, 2024) (quotation omitted).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (int. cit. omitted). Pleadings that contain "no more than conclusions … are not entitled to the assumption of truth" that would be otherwise applicable on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, the Court need not "'accept as true … [Plaintiffs'] allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation omitted).

## V. ARGUMENT

### A. The Complaint Should Be Dismissed Pursuant To Rule 12(b)(1) Because Plaintiffs Fail to Establish Article III Standing.

#### 1. *Plaintiffs Have Not Alleged a Concrete Privacy Injury.*

To establish standing, Plaintiffs must show they "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 426 (2021) ("Article III standing requires a concrete injury even in the context of a statutory violation.") (quoting *Spokeo*, 578 U.S. at 341)); *see also Popa*, 153 F.4th at 793. A concrete injury must bear a "close relationship" to a traditionally actionable harm. *TransUnion*, 594 U.S. at 426. Thus, Plaintiffs must "identify the specific personal information" that "implicates a protectable privacy interest" and was intercepted or disclosed. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1, 3 (C.D. Cal. Apr. 5, 2023); *see also Popa*, 153 F.4th at 793; *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023).

No such concrete injury exists here. Plaintiffs fail to allege ***any facts*** describing their visits to the Website—let alone facts showing they suffered any harm. They do not allege *when* they visited the Website, *what* pages they viewed, *how* they interacted with them, whether they input any information into the Website, or whether *their own* information was even collected by CKE during those visits. In sum, Plaintiffs failed to identify any sensitive or personal data, the disclosure of which could plausibly be considered "highly offensive to a reasonable person." This omission is dispositive on the question of standing. *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) ("[P]laintiffs must … show that they ***personally have been injured***.") (emph. added); *Popa*, 153 F.4th at 791 (plaintiff lacked Article III standing because she failed to explain how the tracking of her pet store website interactions "caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law.").

The Ninth Circuit's decision in *Popa* controls. There, the plaintiff alleged the nonconsensual collection of more than thirty categories of website-interaction data, including device, browser, operating-system, location, mouse-movement, screen-swipe, text-input, and scroll-depth

information. *Popa*, 153 F.4th at 786. The Ninth Circuit held that those allegations did not establish a concrete privacy injury because the plaintiff identified no "embarrassing, invasive, or otherwise private information" that was collected. *Id.* at 791. Instead, the court analogized the alleged tracking to a store clerk observing shoppers and distinguished *Davis v. Facebook, Inc.*, 956 F.3d 589 (9th Cir. 2020), where Facebook allegedly collected "an enormous amount of individualized data" amounting to a user's "comprehensive browsing history," notably including visits to sensitive or embarrassing websites. *Id.* at 603, 605.

The same defect found in *Popa* exists here. The Complaint devotes the majority of its nearly ***200 allegations*** to explaining how cookies and tracking technologies ***generally*** operate and what information they are ***capable*** of collecting. *See, e.g.*, Compl., ¶¶ 19-27, 42-77. Plaintiffs allege that cookies may collect broad categories of user information, including browsing and visit history, interactions with the Website, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URLs, session information, user identifiers, and geolocation data. Compl., ¶ 26, 45, 55. But they do not allege what information was ***actually collected from them***. They do not allege that they entered names, email addresses, payment information, physical addresses, phone numbers, or any sensitive information into the Website. Nor do they allege that they created an account, joined a loyalty program, or transmitted private information through the Website. Plaintiffs also include undated screenshots allegedly depicting Chrome Developer Tools network traffic after an unidentified "user" selected "Reject All" on the Challenged Banner. Compl., ¶¶ 37-40, 46, 56-65. But Plaintiffs do not allege that those examples depict transmissions from any of Plaintiffs' ***own*** devices during their ***own*** visits. Allegations about what the Third Parties' cookies ***could*** conceivably collect from some users in some circumstances do not establish what, if anything, was collected from these Plaintiffs in these circumstances.

Courts routinely reject vague and conclusory allegations of privacy violations, holding that far more detail than Plaintiffs provide in the Complaint is required to determine whether a protectable privacy interest has been alleged. *See Diaz v. Paramount Skydance Corp.*, 2026 WL 1090958, at *4 (C.D. Cal. Apr. 20, 2026) ("Even accepting their allegations as true, Plaintiffs do not present any evidence that the disclosure of their Platform activity caused embarrassment, was

invasive, or that the videos they watched were at all private.") (quot. omitted); *In re USA Today Co., Inc. Internet Tracking Litigation*, 2026 WL 932655, at *3 (N.D. Cal. Apr. 6, 2026) (dismissing CIPA claim for failure to plead a cognizable injury); *Silvia Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026) ("Plaintiff has not made any allegations that the information collected, or its reach, would have been highly offensive.").

2. *Plaintiffs Have Not Alleged Any Concrete Injury.*

Plaintiffs' bare assertion that their information suffered a "diminution in value" does not establish a concrete injury for purposes of Article III standing. Courts consistently hold that a plaintiff must plead facts showing not only that personal information has economic value, but also how the defendant's conduct caused the plaintiff to lose that value. *See, e.g., Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *7 (S.D. Cal. Feb. 23, 2026); *Hubbard v. Google LLC*, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024). Plaintiffs allege neither. They do not claim they sought to sell, monetize, or otherwise profit from the information allegedly transmitted, nor do they identify any lost economic opportunity attributable to CKE's conduct. Instead, they contend that CKE may have monetized the data for its own benefit. But as courts in this district have recognized, "even if a company made money off of the sharing or use of a plaintiff's information, that company's gain of money does not equal a plaintiff's loss of money or property." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025); *see also Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) ("That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property.") (int. quot. omitted).

Plaintiffs' loss-of-value theory is also logically at odds with Plaintiffs' larger privacy theory. Plaintiffs cannot on one hand allege harm stemming from allegedly highly personal and sensitive information (*see, e.g.*, Compl. ¶¶ 39, 151, 153, 179) and simultaneously claim lost value because they could not monetize (and necessarily disclose) that same information. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1090 (N.D. Cal. 2023) (rejecting economic injury theory where the "crux" of plaintiffs' case concerned a third-party's receipt of information "that plaintiffs apparently do not want" a third-party to have).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs' claims lack Article III standing and should be dismissed.

**B. <u>The Complaint Should Be Dismissed Because Plaintiffs' Claims Fail to Meet the Heightened Pleading Standard of Rule 9(b).</u>**

Plaintiffs' claims all arise from alleged "egregious violations of consumer privacy and breach of consumer trust in violation of California law," premised on purported false representations that CKE allowed users to browse the Website without being tracked, followed, or targeted by third-party advertisers or data brokers—while allegedly disregarding users' expressed preferences and fraudulently concealing their wrongdoing. *See, e.g.*, Compl., ¶¶ 1-4, 16-18, 30-31. Because Plaintiffs allege a single, unified course of fraudulent conduct upon which they rely to support every claim, all claims "sound in fraud" and are subject to Rule 9(b)'s heightened pleading requirements. *See, e.g.*, *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *3 (N.D. Cal. Dec. 22, 2025) (finding the entirety of a virtually identical cookie banner complaint to be subject to Rule 9(b) because the "alleged deception [] forms the backbone for all of Plaintiffs' claims, and therefore the Court finds that the nature of the averred conduct sounds in fraud"); *Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200-01 (N.D. Cal. 2019) (applying Rule 9(b) to misrepresentation-based claims including intrusion upon seclusion and invasion of privacy claims).

Plaintiffs fall far short of meeting this standard. Rule 9(b) requires them to plead with particularity the "who, what, when, where, and how" of the alleged misconduct. *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 744 (N.D. Cal. 2019) (int. quot. omitted). Yet the Complaint includes virtually no allegations describing any of Plaintiffs' actual experiences on the Website. Instead, it relies on a handful of undated screenshots purportedly obtained from an unidentified "Website user." *See* Compl., ¶¶ 31-41. That approach is legally insufficient to satisfy Rule 9(b)—or even Rule 12(b)(6)—because Plaintiffs never allege how *they themselves* were misled, defrauded, or harmed. *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (dismissing fraud-based claims where plaintiff "fail[ed] to provide the particulars of ***her own experience***" reviewing or relying on misrepresentations) (emph. added). Rather than plead these threshold facts, Plaintiffs offer only amorphous assertions about their purported visits, forcing CKE to speculate about their fraud-based claims, including ***when*** they visited the Website, which ***version***

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

***of the cookie banner*** they encountered, ***what representations*** that banner made, ***which pages*** they viewed, ***what data*** (if any) they entered, ***what communications*** were allegedly intercepted, and ***what cookies***, if any, fired on their devices. Without additional factual allegations about Plaintiffs' visits to the Website—information uniquely within Plaintiffs' possession—CKE cannot meaningfully assess or respond to the claims.

At minimum, Plaintiffs should identify when they allegedly visited the Website with greater specificity, rather than relying on the vague, undifferentiated four-year period alleged in the Complaint. *See* Compl. ¶¶ 84, 93, 102. Those dates are critical not only to standing, but also to the timeliness and viability of Plaintiffs' claims given that CKE's cookie banner, the Website's underlying code, and its content and functionality changed over time. *See* Declaration of Max Scholz ("Scholz Decl."), ¶¶ 3-4, 6. Plaintiffs allege that they interacted with the Challenged Banner, yet CKE discontinued that version of the cookie banner in March 2024—more than two years before Plaintiffs filed this action. *Id.*, ¶ 6. If Plaintiffs encountered only the version of the banner depicted in the Complaint, a version that has not been used for more than two years, then their privacy-based claims are untimely. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) (statutes of limitations for "intrusion upon seclusion and invasion of privacy claims is two years."); *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) (recognizing CIPA's one-year limitations period).[3]

Plaintiff Colby's vague allegations regarding when she visited the Website and when her claims allegedly arose further underscore the need for greater particularity. Although the Complaint references a prior demand letter sent by Plaintiffs' counsel to CKE (Compl. ¶ 17), it notably omits that counsel identified Plaintiff Colby as the named claimant in October 2023—more than two years before Plaintiffs filed this action. *See* Declaration of Bethany G. Lukitsch ("Lukitsch Decl."), ¶¶ 3-5. That fact bears directly on the timeliness of Plaintiff Colby's claims. Indeed, because Plaintiff Colby knew of and asserted her alleged privacy claims by October 2023, the applicable one- and

[3] Plaintiffs' conclusory reliance on "the delayed discovery rule" and fraudulent concealment does not save their claims. Compl., ¶¶ 16-18. Plaintiffs allege no facts showing when or how they discovered their alleged injuries, which is fatal to both theories. *See, e.g., Jaeger v. Howmedica Osteonics Corp.*, 2016 WL 520985, at *14 (N.D. Cal. Feb. 10, 2016) (rejecting application of discovery rule where plaintiffs failed to allege the date they discovered their injuries); *see also Cooper v. Simpson Strong-Tie Co., Inc.*, 460 F. Supp. 3d 894, 919 (N.D. Cal. 2020).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

two-year statutes of limitations bar those claims. Rule 9(b) exists to prevent precisely this type of obfuscation by requiring Plaintiffs to plead the circumstances of the alleged misconduct with particularity, including when the alleged misrepresentations occurred and when their claims accrued.

Because Plaintiffs fail to satisfy Rule 9(b), the Complaint should be dismissed in its entirety. *See Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1174-75 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016); *see also de Ayora*, 2025 WL 3707561, at *3. The Court can stop its analysis here; however, even if Rule 9(b) pleading standards are deemed to be met, each of the Complaint's causes of action should be dismissed pursuant to Rule 12(b)(6) as detailed below.

### C. <u>Plaintiffs' Common-Law Privacy Claims Fail (Counts I and II).</u>

Plaintiffs fail to state either an invasion of privacy or intrusion upon seclusion claim. Courts analyze the claims together when they rest on the same facts. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Plaintiffs must allege both a reasonable expectation of privacy and a highly offensive intrusion. *Davis*, 956 F.3d at 601. The California Constitution imposes a "high bar" on Plaintiffs' privacy claims, *see Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), and they fail to meet it here.

***First***, Plaintiffs do not plausibly allege a reasonable expectation of privacy. The Complaint asserts that they voluntarily visited a public fast-food website to review menu items, promotions, deals, and online ordering options, and, in the case of Plaintiff Coleman, to place online pickup orders. Compl., ¶¶ 84, 93, 102. Plaintiff Parks and Plaintiff Colby do not allege that they placed an order, and Plaintiff Coleman does not allege that he entered payment information, created an account, joined a rewards program, or submitted sensitive information—let alone that any such input-information was collected. Plaintiffs instead rely on generalized allegations that cookies were ***capable*** of collecting data that they label "Private Communications," including browsing history, website interactions, device information, URLs, session information, identifiers, and geolocation data. Compl., ¶¶ 26, 45, 55. But merely branding ordinary website analytics data as "Private Communications" does not make them so. Courts routinely reject such privacy claims. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) (no protected privacy interest in basic



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

identification information or descriptive URLs generated from browsing); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024) (no invasion of privacy based on account name, IP address, geographic location, and referral URL).

***Second***, Plaintiffs do not plausibly allege any highly offensive intrusion. "Data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling*, 615 F. Supp. 3d at 1090. Plaintiffs' allegations that advertising or analytics cookies transmitted from a fast-food website and amounting only to ordinary website activity after they clicked "Reject All" are not the kind of "embarrassing, invasive, or otherwise private information" necessary to convert routine commercial analytics collection into a "highly offensive" intrusion. *See Popa*, 153 F.4th at 791 (rejecting claims that defendant's monitoring of a ***pet store website*** was "highly offensive" because it "seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales"). Nor can Plaintiffs convert routine commercial tracking into a serious privacy invasion by recasting it as fraud. *See supra*, Sections V.A.1, V.B; *Hammerling*, 615 F. Supp. 3d at 1090-91. And, electronic data collection and disclosure is no "egregious breach of social norms … ***[e]ven assuming this information was transmitted without Plaintiffs' knowledge and consent***. . . ." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (emph. added).

The same result as in *In re iPhone*—dismissal with prejudice—is warranted here.[4]

**D. <u>Plaintiffs' CIPA Section 631(a) Wiretapping Claim Fails (Count III).</u>**

CIPA section 631(a) imposes liability on a defendant who intentionally engages in wiretapping, willfully attempts to learn the contents or meaning of a communication in transit, uses information obtained through those acts, or "aids, agrees with, employs, or conspires with" another to do so. Cal. Pen. Code § 631(a). Because CIPA is a criminal statute, Plaintiffs must allege the necessary *scienter*—willful or intentional conduct. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024). Plaintiffs appear to proceed against CKE under the aiding-and-abetting prong, *see* Compl., ¶ 147, which requires them to plead a plausible predicate violation by a third

[4] Courts have dismissed invasion of privacy claims under both California's Constitution and common law when far more sensitive data allegedly was collected and disclosed. *See, e.g., Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (disclosure of social security numbers "do[es] not constitute an egregious breach" of social norms).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

party. *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022). Plaintiffs fail to plausibly allege any predicate violation or that CKE acted with the requisite criminal mental state.

***First***, Section 631(a)'s clause one does not apply to the online conduct alleged here. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming summary judgment where no evidence the defendant "made an unauthorized connection through a telephone wire"); *see also Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 755 (N.D. Cal. 2023).

***Second***, Plaintiffs fail to plausibly allege a violation of clause two. That clause applies only where a third party "***reads, or attempts to read, or to learn the contents or meaning***" of a "***communication***" "***while the same is in transit.***" *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1032-33 (S.D. Cal. 2024) (emph. added); *see also Lau v. Gen Digital Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024). As the Ninth Circuit has made clear, interception under Section 631(a) requires acquisition of a ***communication during transmission***. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ("This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'"). The Complaint contains no factual allegations explaining how a third party acquired, let alone read or attempted to read, any of Plaintiffs' "communications" during transmission. Plaintiffs instead baldly claim that an "interception" occurred "while in transit." Compl., ¶¶ 66-73. Such boilerplate allegations are routinely held insufficient. *See Rodriguez v. Google LLC*, 2022 WL 214552, at *1-2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit[.]"); *Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (dismissing wiretap claim where allegations of interception "in transit" were conclusory).

Nor do Plaintiffs identify any "contents" of "communications" that were intercepted. Section 631 protects communication contents, not metadata or routing details. *See Brodsky*, 445 F. Supp. 3d at 127; *In re Zynga Priv. Litig.*, 750 F.3d at 1106. Courts likewise treat browsing history, page views, keystrokes, mouse clicks, device information, visit duration, location, browser type,

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

and operating system as non-content. *See, e.g.*, *Brodsky*, 445 F. Supp. 3d at 127. While website interactions, user input, shopping behavior, or referring URLs ***might involve content in some circumstances***, here Plaintiffs fail to allege that they personally entered any such information on the Website. *See, e.g., Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) (collecting cases which all require the visitor to input some information to constitute a "communication"). If Plaintiffs simply clicked a button or a link or browsed from page to page, those actions do not equate to a "communication." *See In re Zynga Priv. Litig.*, 750 F.3d at 1102, 1106 (URLs sent when a user clicks on a link are not considered "contents" of a communication under the Federal Wiretap Act). And yet the Complaint lacks any facts demonstrating how any Plaintiff personally interacted with the Website—such as entering search queries, names, demographic details, email addresses, location data, or payment information, or any other substantive content.

***Third***, allegations under clause three fail because it applies only to information obtained through a predicate violation of clauses one or two. Having failed to plead any underlying violation, any claim under clause three likewise fails.

***Finally***, as to the ***fourth*** clause, having failed to plead a predicate § 631(a) violation, Plaintiffs' derivative aiding-and-abetting claim fails. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024). And in any case, Plaintiffs still fail to plead that CKE acted with "knowledge of the conduct that will violate the statute and a purpose of aiding" that violation. *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024). The alleged technologies are standard commercial tools supplied by Google, TikTok, and Snapchat for analytics, advertising, attribution, and marketing. Compl., ¶¶ 27, 42-65, 79-80. Absent plausible allegations showing CKE ***intended*** to intercept communications or knowingly assisted a predicate violation, Plaintiffs fail to state a claim under § 631(a).

### E. Plaintiffs' CIPA Section 638.51 Pen Register Claim Fails (Count IV).

CIPA also precludes "a person…[from] install[ing] or us[ing] a pen register [] without first obtaining a court order." Cal. Pen. Code § 638.51(a). Under CIPA, a "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information … but not the

contents of a communication." Cal. Pen. Code § 638.50(b). Plaintiffs assert that third-party cookies and related software code used by virtually all companies on their websites qualify as pen register devices that require a court order for use. This reading defies logic and the legislative history.

In construing a statute, "California courts determine the Legislature's intent so as to effectuate the law's purpose." *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025) (int. quot. omitted). The legislative history indicates that CIPA's provisions do not concern the analytical tools employed here and certainly are inapplicable in the context of Plaintiffs' allegations. *See* California Assembly Bill No. 929, California 2015-2016 Regular Session, at 1 (Legislative Counsel's Digest preceding the bill stating that A.B. 929 "would clarify that any location information obtained ... is limited to the information that can be determined from the ***telephone number***.") (emph. added). The bill does not mention IP addresses or other data. And, given that A.B. 929 was enacted in 2015, when the internet and website tracking software were both known and widespread, Plaintiffs cannot plausibly argue that the Legislature was unaware of IP addresses or other internet identifiers when it passed the law. The California Legislature knows how to apply a statute to internet software when it wants to. *See, e.g.*, Cal. Pen. Code § 632.01 (added in 2017 and expressly extending the statute to "Internet Web sites and social media" and "the contents of a confidential communication with a health care provider ...."). "When the Legislature has carefully employed a term in one place and has excluded in another, it should not be implied where excluded." *See Rodriguez v. Ink America Int'l Grp. LLC*, 2025 WL 4034985, at *3 (Cal. Super. Dec. 10, 2025) (int. quot. & cit. omitted).

Even if cookies could under certain circumstances qualify as pen register devices, Plaintiffs fail to identify not only their communications while on the Website, but also the ***specific dialing, routing, addressing, or signaling information*** for ***outgoing communications*** that were purportedly tracked. *See Wiley*, 2025 WL 3654085, at *9 ("[T]he problem with plaintiffs' pen register claim is that they have not alleged that *they* ever communicated with the website."). As discussed above, the Complaint is completely devoid of any factual allegations regarding ***Plaintiffs' own*** alleged communications with the Website. And, unsurprisingly, in the absence of any allegations that they personally communicated with the Website, Plaintiffs cannot allege what specific "dialing, routing,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

addressing, or signaling information" for those alleged outgoing communications were tracked. *See* Cal. Pen. Code § 638.50(b); *see Wiley*, 2025 WL 3654085, at *9. Plaintiffs' pen register claims should be dismissed.

**F. Plaintiffs' Common-Law Fraud/Misrepresentation Claim Fails (Count V).**

In California, the elements of a cause of action for fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014). Here, Plaintiffs fail to plausibly plead: (1) when they visited the Website; (2) which version of the cookie banner they allegedly encountered; (3) what data, if any, was collected from them during their visits; or (4) facts showing CKE knew any challenged cookie or third-party resource would operate contrary to the banner. *See supra*, Sections V.A.1, V.B. Nor do Plaintiffs plead actual reliance, CKE's knowledge, or resulting damage with the required particularity. Plaintiffs' "formulaic recitation of the elements" of fraud lacks factual support and cannot surmount the *Twombly/Iqbal* standard. *See Twombly*, 550 U.S. at 555; Compl., ¶¶ 167-185. Plaintiffs' fraud claim should be dismissed.

**G. Plaintiffs' Unjust Enrichment Claim Fails (Count VI).**

Plaintiffs' unjust enrichment claim is improper and must be dismissed with prejudice. California law does not recognize unjust enrichment as a standalone cause of action, as it is merely synonymous with restitution. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also Hooked Media Grp. v. Apple Inc.*, 55 Cal. App. 5th 323, 336 (2020). Even if construed as a quasi-contract claim for restitution, Plaintiffs must plausibly allege the specific benefit received and unjustly retained by CKE. *See California Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024); *see also Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378, at *7 (N.D. Cal. Mar. 17, 2025) (Donato, J.) (permitting unjust enrichment claim to proceed as quasi-contract claim where defendant did not challenge the "substance" of the claim and plaintiff "plausibly alleged severe intrusions" on public-school children's privacy). Here, the Complaint fails to allege any such benefit. Moreover, restitution cannot be claimed absent a

sufficiently pled actionable misrepresentation. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016). As stated above, Plaintiffs have not alleged fraud with the requisite particularity. "[W]ithout the other claims, plaintiffs' claim for unjust enrichment fails, as well." *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007).

## VI. CONCLUSION

Plaintiffs' claims rest on core legal defects that cannot be cured by amendment, warranting dismissal with prejudice. Even if Plaintiffs might be able to add some more browsing detail from their interactions of more than two years ago, no amendment can transform routine website analytics collecting data input into or generated from browsing a public fast-food website into "embarrassing, invasive, or otherwise private" information sufficient to establish Article III standing or a highly offensive intrusion. Nor can Plaintiffs plead around CIPA's statutory limits by labeling ordinary third-party cookies and website code as wiretaps or pen registers, or salvage restitution where CKE retained no cognizable benefit at Plaintiffs' expense. Accordingly, CKE respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

Dated: July 14, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Bethany G. Lukitsch*
Bethany G. Lukitsch
Kamran B. Ahmadian
Andrew C. Burnquist

*Attorneys for Defendant*
CKE RESTAURANTS HOLDINGS, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES