**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN COLEMAN, MEGAN PARKS, and SUSAN COLBY, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CKE RESTAURANTS INC.,<br><br>Defendant. | Case No. 3:26-CV-04610-JD<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT CKE RESTAURANTS HOLDINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT<br><br>Date: September 24, 2026<br>Time: 11:00 a.m.<br>Judge: Hon. James Donato<br>Courtroom: San Francisco, Courtroom 11 |

# TABLE OF CONTENTS


**I. INTRODUCTION** ........ 1

**II. STATEMENT OF FACTS** ........ 2

**III. ARGUMENT** ........ 3

**A. Plaintiffs Plead a Concrete Injury-in-fact** ........ 3

**B. Plaintiffs' Claims Are Timely** ........ 6

**C. Plaintiffs Adequately Plead Fraud Under Rule 9(b)** ........ 7

**D. Defendant's Scattershot 12(b)(6) Arguments Fail** ........ 9

1. Plaintiffs adequately plead their common law privacy claims ........ 9

2. Plaintiffs Have Adequately Pled CIPA Section 631(a) ........ 10

a. Plaintiffs adequately allege Defendant's intent ........ 11

b. Plaintiffs have alleged "In Transit" ........ 12

c. Plaintiffs allege "contents" were intercepted ........ 12

**d. Plaintiffs Have Adequately Pled CIPA Section 638.51** ........ 14

**e. Plaintiffs Unjust Enrichment Claim May Proceed** ........ 14

**IV. THE COURT SHOULD STRIKE DEFENDANT'S DECLARATIONS** ........ 15

**V. CONCLUSION** ........ 15

## TABLE OF AUTHORITIES

### CASES

*B.K. v. Desert Care Network*, 2024 U.S. Dist. LEXIS 18970 (C.D. Cal. 2024) .......... 7

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) .......... 15

*Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*, 2023 U.S. Dist. LEXIS 245751 (C.D. Cal. 2023) .......... 6

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 13

*Byars v. Tire*, 654 F. Supp. 3d 1020 (C.D. Cal. Feb. 3, 2023) .......... 8

*Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335 (N.D. Cal. 1991) .......... 15

*Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728 (N.D. Cal. 2019) .......... 6

*Doe v. Amgen, Inc.*, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. 2024) .......... 11

*Walsh v. Dollar Tree Stores, Inc.*, 2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025) .......... 9

*Durnford v. MusclePharm Corp.*, 907 F.3d 595 (9th Cir. 2018) .......... 6

*Echeverria-Corzan v. Torrid LLC*, No. 3:25-cv-06926-JD .......... passim

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993) .......... 15

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... passim

*Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) .......... 1, 7, 9, 11

*Goldstein v. Rumble Inc.*, 2026 U.S. Dist. LEXIS 113489 (C.D. Cal. 2026) .......... 13

*Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 13

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) .......... 9

*In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 3, 5, 9, 10

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 5

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 10

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) .......... 12

*Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986 (N.D. Cal. 2024) .......... 12

*Javier v. Assurance IQ, LLC*, 2022 U.S. App. LEXIS 14951 (9th Cir. 2022) .......... 10

*Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023) .......... 3

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 10

*Maghoney v. Dotdash Meredith, Inc.*, 2026 U.S. Dist. LEXIS 36704, at *15 (S.D. Cal. Feb. 23, 2026) .......... 5

*Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 U.S. Dist. LEXIS 186701 (C.D. Cal. 2024) .......... 12

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) .......... 4

*Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. 2019) .......... 11

*Ribas v. Clark*, 38 Cal. 3d 355 (1985) .......... 12

*Rodriguez v. Ford Motor Co.*, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. 2024) .......... 10

*Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121 (N.D. Cal. 2008) .......... 10
*Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906 (N.D. Cal. 2026) .......... 9, 13
*Shah v. Politico LLC*, 2026 U.S. Dist. LEXIS 25740 (N.D. Cal. Feb. 6, 2026) .......... 9, 15
*Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. 2021) .......... 10
*Six v. IQ Data Int'l, Inc.*, 129 F.4th 630 (9th Cir. 2025) .......... 3
*Smith v. Yeti Coolers, LLC*, 2024 U.S. Dist. LEXIS 194481 (N.D. Cal. 2024) .......... 11
*St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) .......... 13
*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 3
*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016) .......... 8
*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 12
*Van Saher v. Norton Simon Museum*, 592 F.3d 954 (9th Cir. 2010) .......... 6
*Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121 (N.D. Cal. 2025) .......... 6

**STATUTES**

Cal. Penal Code § 631(a) .......... 10
Cal. Penal Code § 638.51 .......... 14

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 6
Fed. R. Civ. P. 12(f) .......... 15
Fed. R. Civ. P. 9(b) .......... 6

## I. INTRODUCTION

Contrary to Defendant CKE Restaurants Inc. suggests, this case does not challenge Defendant's use of "standard commercial tools supplied by Google, TikTok, and Snapchat." Dkt. 14 at 12. But this case is much more sinister and offensive: Defendant affirmatively and prominently represented that Plaintiffs could choose to protect their data from third parties, and that Defendant would honor that choice, but Defendant violated that promise by installing tracking cookies anyway so that third parties could surreptitiously take Plaintiffs' data while they used Defendant's Website. By presenting Plaintiffs with a choice, and then, unilaterally and without disclosure, refusing to honor their choice, Defendant lulled Plaintiffs into a false sense of security while depriving them of the control they believed they had over their own information.

Given this context, perhaps it is no surprise that Defendant refuses to directly engage with Plaintiffs' allegations and instead repeatedly misconstrues both the facts asserted in this case and applicable precedent, seeking dismissal based on legal theories that all courts, including this Court, have rejected in similar cases or that strain credulity. *See Echeverria-Corzan v. Torrid LLC*, No. 3:25-cv-06926-JD, Dkt. 35 at 1–2 ("*Torrid*"); *Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *21–22 (N.D. Cal. July 14, 2025) ("*Motorola*") (denying motion to dismiss alleging defendant's website violated privacy laws by using tracking cookies after expressly promising it would not do so); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 868 (N.D. Cal. 2025) (same).

Defendant attempts to avoid liability by arguing that Plaintiffs lack standing to sue. But the privacy harms alleged here are concrete under Article III because they are identical or similar to traditionally recognized harms such as invasion of privacy. The Complaint further adequately alleges that Plaintiff had a reasonable expectation of privacy when they clicked the "Reject All" button and browsed the Website and that Defendant's invasion of privacy was highly offensive. Plaintiff has also adequately pled her claims for CIPA violations, fraud, and unjust enrichment.

Based on the foregoing, the Court should fully deny Defendant's motion to dismiss and strike the improper declarations.

## II. STATEMENT OF FACTS

Like many companies, Defendant designed its Website to include resources and programming scripts from third parties that enable them to place cookies—small text files sent by a website server to a user's web browser and stored locally on the user's device—and other similar tracking technologies on users' browsers and devices to transmit cookies along with user data. Dkt. 1 ("Compl.") ¶ 2. But unlike most companies, Defendant offered users a choice to browse *without* placing these cookies and other tracking technologies on their browsers, allowing them to use the Website without tracking or targeting by third-party data brokers or advertisers. *Id*. ¶¶ 1–2, 31–32. Defendant's cookie banner represented that the Website "stor[es] [] cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts" and that users could "REJECT ALL" cookies or manage their settings by clicking "COOKIE SETTINGS." *Id.* ¶ 32. Users who clicked the "COOKIE SETTINGS" button were then directed to Defendant's cookie preferences window where Defendant represented users could toggle off and reject "Targeting," "Performance," and "Functional" cookies. *Id.* ¶ 31.

Plaintiffs all visited the Website on several occasions during the last four years and rejected all cookies. *Id.* ¶¶ 84, 86, 93, 95, 102, 105. Plaintiffs all browsed pages on the Website while seeking "information about Defendant's fast food menu." *Id.* ¶¶ 84, 93, 102. Plaintiff Coleman visited the website "approximately twice per month" "to review promotional deals, promo codes, and new menu items." *Id.* ¶ 84. Plaintiff Coleman also input information several times "to place online orders for pickup from Defendant's restaurant locations." *Id.*

Despite its representation that users could "REJECT ALL" cookies and tracking was false. When users clicked reject all cookies, Defendant surreptitiously causes several third parties—including Google, TikTok, and Snap—to place and/or transmit cookies that track users' website browsing activities and eavesdrop on users' private communications on the website. Defendant thereby caused the collection and dissemination of users' personal information, including their browsing history, IP addresses, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, geolocation data, signaling information,

and addressing information (collectively, "Private Communications"). *Id.* ¶¶ 26–29, 34–39, 74–77. The Private Communications were intercepted in transit through the Third Parties data ingestion systems which are "designed to receive, read, and act upon incoming data streams in real time." *Id.* ¶ 66; *see id.* ¶¶ 67–73. The Third Parties use the Private Communications to profile users and target them with advertising for the Third Parties' own financial gain. *Id.* ¶¶ 5, 27, 40, 42–51, 53–63, 64–65. This is the tracking and data sharing that Plaintiffs and other Website users sought to avoid when they clicked "Reject All" cookies.

## III. ARGUMENT

### A. Plaintiffs Plead a Concrete Injury-in-fact[1]

Plaintiffs establish a concrete injury-in-fact because CIPA provides a remedy for harms that bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American Courts"—i.e., invasions of privacy. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Indeed, invasions of privacy have long been recognized at common-law as concrete injuries. *Id.*; *see Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 635 (9th Cir. 2025); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020) ("*In re Facebook*") ("[T]he legislative history and statutory text demonstrate that … the California legislature intended to protect … historical privacy rights when [it] passed CIPA."). As a result, "the relevant law is settled" that when a wiretapping statute like CIPA "codifies such substantive privacy rights," violating that statute "gives rise to a concrete injury sufficient to confer standing." *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023). Thus, here, because Plaintiffs allege that Defendant caused third-party tracking cookies, including the Third Parties' cookies, to be placed on Website users' browsers and devices and/or transmitted to the Third Parties which enabled the Third Parties to collect user data in real time that discloses Website visitors' Private Communications.[2]

---

[1] Defendant challenges only Plaintiffs' standing to bring CIPA claims. It does not and cannot challenge Plaintiff's Article III standing to bring common law privacy, fraud and breach of contract claims.

[2] Defendant opens its brief by casting this case as part of a "series of almost identical cookie-banner lawsuits filed by Gutride Safier, whose clients test companies' voluntary 'cookie banners.'" Dkt. 14 at 1. That characterization is nowhere in the Complaint. Each Plaintiff specifically alleges that he or she "is not a consumer advocate, a 'tester,' or a compliance auditor" who visited the Website "to test or evaluate Defendant's privacy practices." Compl. ¶ 85 (Coleman), ¶ 94 (Parks), ¶ 103 (Colby). Plaintiffs' visits to the Website were instead consistent with an ordinary user's visits—to browse Defendant's menu,

Defendant argues that "Plaintiffs fail to allege ***any facts*** describing their visits to the Website." Dkt. 14 at 4. But Plaintiffs all allege they have visited and browsed several pages on the Website for "information about Defendant's fast food menu." Compl. ¶¶ 84, 93, 102. Plaintiff Coleman further alleges that he "regularly visited the Website to review promotional deals, promo codes, and new menu items, and to place online orders for pickup from Defendant's restaurant locations." *Id.* ¶ 84.[3] Indeed, this Court has rejected this argument in a similar case. *Torrid*, Dkt. 35 at 1.

Defendant next claims "[t]he same defect found in *Popa* [*v. Microsoft Corp*., 153 F.4th 784, 791 (9th Cir. 2025)] exists here" because "they do not allege what information was actually collected of them." Dkt. 14 at 5. However, in *Haleon*, Judge Orrick rejected this exact argument, reasoning that the tracking technologies in at issue in *Popa* "are . . . distinguishable, both in users' interactions with them and their capabilities" from those at issue here. 815 F. Supp. 3d at 866. For example, "Popa never purported to have expressly 'reject[ed]' the tracking technology at issue." *Id*. Further, as is the case here, the court in *Haleon* found *Popa* distinguishable because "Haleon's website explains what its cookies are capable of," i.e. that the cookies were used to "count visits and traffic sources so *Haleon* can measure and improve the performance of its website[s]," and for "tracking users' browsers across other sites and building up a profile of users' interests." 815 F. Supp. 3d at 867 (cleaned up); *see* Compl. ¶¶ 26, 30–31 (alleging similar disclosures from the Websites regarding the capabilities of cookies). The court in *Haleon* determined that the plaintiffs "allegations are sufficient to show Article III standing." *Id*. This Court should do the same, for much of the same reasons. *See also Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 913 (N.D. Cal. 2026) (rejecting *Popa's* application to similar allegations).[4]

---

promotions, and deals, and, for Plaintiff Coleman, to place online orders. *Id.* ¶¶ 84, 93, 102. On a motion to dismiss, the Court must accept these well-pleaded allegations as true.

[3] Moreover, Defendant's Website Privacy Policy states that it collects information about, *inter alia*, "visitors' preferences," "user-specific information on which pages a visitor accesses or visits," and "browser types or other information that a visitor sends via their browser or other means." Compl. ¶ 30.

[4] Defendant asserts that "[c]ourts routinely reject vague and conclusory allegations of privacy violations." Dkt. 14 at 5–6. But Defendant conveniently omits that this Court has denied a motion to dismiss and allowed similar privacy claims to proceed. *See Torrid*, Dkt. 35 at 1 (holding plaintiff "plausibly alleged that the disclosure of her personal information, especially after she rejected Torrid's cookies, could be considered highly offensive. The determination of offensiveness is also better made on a fully developed evidentiary record.").

Defendant next argues that Plaintiffs "bare assertion that their information suffered a 'diminution in value' does not establish a concrete injury for purposes of Article III standing." Dkt. 14 at 6. But Defendant conflates standing and damages. Defendant's concrete invasions of Plaintiffs' privacy rights are cognizable injuries which confers standing; valuing those injuries is different. Diminution in value is but one method for calculating Plaintiffs' injuries. *See* Compl. ¶¶ 115, 128–130, 138–140, 154, 166, 184–185. This is sufficient for standing.

Defendant claims "[c]ourts consistently hold that a plaintiff must plead facts showing not only that personal information has economic value, but also how the defendant's conduct caused the plaintiff to lose that value." Dkt. 14 at 6.[5] However, courts in this District recognize that claims that a plaintiff's "information was disseminated to third parties in violation of [his] privacy—is sufficient to confer standing." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019). Additionally, the Ninth Circuit recognized control over one's own information as a concrete harm sufficient for standing. *See In re Facebook*, 956 F.3d at 599 (a plaintiff can be harmed by loss of control over personal information). Plaintiffs also allege that Defendant was unjustly enriched by invading his privacy and property rights. *See* Compl. ¶¶ 83, 188, 190, 194. This, too, is a cognizable basis for standing. *See In re Facebook*, 956 F.3d at 599–600.[6]

Defendant next argues that "Plaintiffs' loss-of-value theory is [] logically at odds with Plaintiffs' larger privacy theory. Plaintiffs cannot on one hand allege harm stemming from allegedly highly personal and sensitive information (*see, e.g.,* Compl. ¶¶ 39, 151, 153, 179) and simultaneously claim loss value because they could not monetize (and necessarily disclose) that same information." Dkt. 14 at 6. But Defendant ignores that the loss in value of data is a separate issue from the loss of control of that data. Plaintiffs have plainly alleged a loss of *control* in the

---

[5] Notably, the *Maghoney* ***plaintiff*** characterized this injury as "informational" and the court reached its holding because the plaintiff there did "not cite any cases which have recognized such an 'informational harm'" and reached its holding by relying on cases that did not involve websites, data privacy, or CIPA claims. *Maghoney v. Dotdash Meredith, Inc.*, 2026 U.S. Dist. LEXIS 36704, at *15 (S.D. Cal. Feb. 23, 2026)

[6] For these same reasons, the Court should reject Defendant's arguments that Plaintiffs do not allege a concrete injury because they "do not claim they sought to sell, monetize, or otherwise profit from the information allegedly transmitted." Dkt. 14 at 6

data, which is *independently* sufficient to provide standing under Article III. *In re Facebook, Inc., Consumer Priv. User Profile Litig.,* 402 F. Supp. 3d 784 (N.D. Cal. 2019).

**B. Plaintiffs' Claims Are Timely**

The statute of limitations is an affirmative defense, and Defendant bears a high burden to establish it on the face of the Complaint alone. Affirmative defenses do not provide a basis for dismissal under Rule 12(b)(6) unless Plaintiffs have pleaded themselves out of a claim by "admit[ting] all the ingredients of an impenetrable defense." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018). Where, as here, a defendant moves to dismiss a claim as untimely, the motion can be granted "only when the running of the statute is apparent on the face of the complaint." *Van Saher v. Norton Simon Museum*, 592 F.3d 954, 969 (9th Cir. 2010) (quotation omitted). That standard is far more demanding than the particularity Plaintiffs must plead under Rule 9(b): Rule 9(b) requires only that Plaintiffs plead the "when" of the alleged fraud with sufficient specificity to give Defendant notice of the conduct at issue, while Defendant's statute of limitations defense requires it to show, from the face of the Complaint alone, that no set of facts could render the claims timely. *Compare Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 744 (N.D. Cal. 2019) *with Van Saher*, 592 F.3d at 969.

Defendant raises its timeliness arguments as a basis to dismiss Plaintiffs' claims, but in doing so, it warps the pleading standard. Defendant argues Plaintiffs "should identify when they allegedly visited the Website with greater specificity, rather than relying on the vague, undifferentiated four-year period alleged in the Complaint." Dkt. 14 at 8. That argument improperly attempts to place the burden on Plaintiffs but "in general a complaint need not anticipate the defense with allegations as to why the claims are timely." *Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*, 2023 U.S. Dist. LEXIS 245751, at *19 (C.D. Cal. 2023). Plaintiff Coleman alleges he visited the Website "on one or more occasions during the last four years." Compl. ¶ 84. That four-year window "includes the past two years or one year, so it is entirely possible, from the face of the complaint, that [Plaintiffs'] claims are timely." *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1131 (N.D. Cal. 2025).

Defendant separately argues that Plaintiff Colby's claims are untimely because "counsel identified Plaintiff Colby as the named claimant in October 2023—more than two years before Plaintiffs filed this action." Dkt. 14 at 8 (citing Declaration of Bethany G. Lukitsch ("Lukitsch Decl.") ¶¶ 3–5). That argument rests entirely on an out-of-record attorney declaration describing pre-suit communications between counsel—materials outside the four corners of the Complaint that Plaintiffs address further below. *See infra* Section IV. In any event, Plaintiffs allege that they "could not reasonably have discovered [Defendant's] conduct at the time of their visits to the Website because it occurred through hidden, technical processes not visible to ordinary users." Compl. ¶ 16. They further allege that they are not trained in the software developer tools needed to analyze the underlying HTTP traffic. *Id.* ¶¶ 92, 101, 110. These allegations are sufficient to allege tolling. *See B.K. v. Desert Care Network*, 2024 U.S. Dist. LEXIS 18970, at *11 (C.D. Cal. 2024). Defendant's suggestion that "Plaintiffs allege no facts" ignores these very allegations. Dkt. 14 at 8 n.3.

**C. Plaintiffs Adequately Plead Fraud Under Rule 9(b)**

Plaintiffs have pleaded "the who, what, when, where, and how" of Defendant's fraud and misrepresentations. Plaintiffs allege that Defendant (who), allowed the Third Parties to collect Website users' Private Communications despite promising they could reject all cookies (what), when Plaintiffs visited Defendant's Website and clicked "REJECT ALL" in the popup cookie consent banner (when and where), and by integrating its Website with Third Party resources, including cookies that were stored on Plaintiffs and Website users' devices that transmit personal information about them (how). *See* Compl. ¶¶ 1–6, 32–83, 167–185 (alleging fraud); *id.* ¶¶ 2, 19–31, 147, 172–174 (alleging intentional conduct); *id.* ¶¶ 86–90, 95–99, 104–108 (alleging reliance); *id.* ¶¶ 115, 128–130, 138–140, 154, 166, 184–185 (alleging injury). This is clearly sufficient. *See Torrid*, Dkt. 35 at 2 ("For the fifth cause of action, [plaintiff] has plausibly alleged the 'who, what, when, where, and how' of the alleged fraud under Rule 9(b)."); *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *38; *Haleon*, 815 F. Supp. 3d at 873. For these same reasons, Defendant's arguments regarding Plaintiffs' common law fraud and misrepresentation claims fail. *See* Dkt. 14 at 14.

Defendant again claims "the Complaint includes virtually no allegations describing any of Plaintiffs' actual experiences on the Website" and Plaintiffs rely "on a handful of undated screenshots purportedly obtained from an unidentified 'Website user.'" Dkt. 14 at 7. But Plaintiffs include allegations as to: (a) the reasons why Plaintiffs visited the Websites, what they did on the Websites, and how often they visited (Compl. ¶¶ 84, 93, 102); (b) Plaintiffs' rejection of cookies, using the options Defendant presented to them (*id.* ¶¶ 86, 95, 105), and (c) how Defendant's Website nevertheless actually and surreptitiously transmitted Plaintiffs' and all other users' Private Communications to Third Parties (*id.* ¶¶ 90, 99, 108).[7]

Defendant next asserts Plaintiffs' complaint "forc[es] CKE to speculate about [Plaintiffs'] fraud-based claims . . . [and] "Plaintiffs' should identify when they allegedly visited the Website." Dkt. 14 at 7–8 (citing Declaration of Max Scholz ¶¶ 3–4, 6). But the purpose of pleading with particularity to put a defendant on notice of the claims against it. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). Here, Defendant does not argue it cannot pinpoint how its Website was programmed, that it had materially different cookie consent banners throughout the class period, or that the advertising cookies raised in the Complaint are not present on the landing page or menu pages Plaintiffs visited. Instead, it relies on a vague declaration which simply states that "OneTrust allows [Defendant] to configure, publish, and modify certain text, appearance, and functionality of the cookie banner and preference center." Dkt. 14-2 ¶ 3. But Defendant does **not** state that the cookie banner representations were materially different throughout the class period. *See* Scholz Decl., ¶ 4 (explaining Defendant's website updates its cookie banner), ¶ 6 (explaining Defendant's cookie banner in the complaint is a prior version). The mere fact that Defendant has the ability to change code on its Website does not show that its representations in the cookie consent banner were

[7] These allegations completely refute Defendant's argument. *See Motorola*, 2025 U.S. Dist. LEXIS 133836, at *16 (rejecting defendant's argument that plaintiff only described data that Motorola *could have* collected). Moreover, courts have consistently refused to require plaintiffs to plead the *exact* communications they had with websites. *See, e.g.*, *Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (stating that "[t]here is no requirement that [plaintiff] specifically allege the exact contents of her communications with Goodyear"; "[plaintiff] merely needs to show that the contents were not record information such as her name and address"). Plaintiffs' identification of the specific categories of information that *are* collected from them and all similarly situated is sufficient.

materially different or that its Website operated in a materially different manner.

### D. Defendant's Scattershot 12(b)(6) Arguments Fail

#### 1. Plaintiffs adequately plead their common law privacy claims

California's common law invasion of privacy and intrusion upon seclusion are analyzed together and require that Plaintiffs show: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook*, 956 F.3d at 606; *Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272, 285–97 (2009). Plaintiffs plainly allege both elements. Compl. ¶¶ 1–5, 25–29, 32, 83–89, 102–06, 113–16. As this Court and many others have recognized, Plaintiffs' complaint survives because they adequately allege they have a reasonable expectation of privacy and that Defendant's invasion of privacy is highly offensive. *Torrid*, Dkt. 35 at 1; *Wiley*, 826 F. Supp. 3d at 1131; *Walsh v. Dollar Tree Stores, Inc*., 2025 U.S. Dist. LEXIS 204652, at *37 (N.D. Cal. Oct. 16, 2025); *Haleon*, 815 F. Supp. 3d at 868; *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *27; *MyFitnessPal*, 824 F. Supp. 3d at 913; *Shah v. Politico LLC*, 2026 U.S. Dist. LEXIS 25740, at *8 (N.D. Cal. 2026).

Disputing Plaintiffs' allegations, Defendant argues that Plaintiffs allege no "reasonable expectation of privacy" because they merely assert "that they voluntarily visited a public fast-food website to review menu items, promotions, deals, and online ordering options, and, in the case of Plaintiff Coleman, to place online pickup orders." Dkt. 14 at 9. But Plaintiffs do not simply allege that Defendant violated their privacy by itself collecting their browsing activities on the Website; rather, they allege that Defendant knowingly assisted *third parties* in collecting large swaths of their data and communications—including "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data"—***after specifically representing*** to Plaintiffs that it would not do so. Compl. ¶¶ 1–6, 19–73, 84–110. Given Defendant's ***own representations*** and the scope of the information gathered in direct violation of those representations, Plaintiffs plausibly allege that

they had a reasonable expectation in the data and communications at issue and that Defendant's conduct was highly offensive. *See Torrid*, Dkt. 35 at 1; *Haleon*, 815 F. Supp. 3d at 868.[8]

Defendant claims that Plaintiffs merely allege "ordinary website analytics data" and describes its "[d]ata collection and disclosure to third parties" as "routine commercial behavior" which is not a "'highly offensive' intrusion of privacy." Dkt. 14 at 9–10. But Plaintiffs allege that Defendant's tracking goes beyond routine website visits. *See* Compl. ¶ 65 (describing Snap cookie that stays on device for a full year and is "used to identify a visitor across multiple domains."); *id.* ¶ 124 (describing creation of consumer profiles). District courts recognize a mass accumulation of data is highly offensive, regardless of the specific type and quality. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023); *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. 2021) ("volume of the collected information is also important" in determining whether "the intrusion was highly offensive.").[9]

**2. Plaintiffs Have Adequately Pled CIPA Section 631(a)**

The fourth clause of Section 631(a) imposes liability on Defendant to the extent it *aided, agreed with,* ***or*** *conspired with third parties* to violate any of the first three prongs of Section 631(a), namely: (1) intentionally wiretapping Plaintiffs' communications, (2) willfully and without consent attempting to learn the contents or meaning of any communication in transit (i.e., eavesdropping), and/or (3) attempting to use or communicate information obtained as a result of either of the two previous activities. Cal. Penal Code § 631(a); *Rodriguez v. Ford Motor Co.*, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. 2024). Contrary to Defendant's arguments (Dkt. 14 at 11), "Section 631(a) applies to Internet communications." *Javier v. Assurance IQ, LLC*, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. 2022).

[8] The fact that Plaintiff Parks and Plaintiff Colby do not allege they placed an order is immaterial. Dkt. 14 at 9. Defendant's collection of user data began as soon as Plaintiffs landed on Defendant's Website and surreptitiously transmitted Plaintiffs' Private Communications to Third Parties as they browsed. *See* Compl. ¶¶ 26, 39–40.

[9] Defendant's reliance on *In re iPhone App. Lit.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) and *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) fail because both predate the Ninth Circuit's decision in *In re Facebook*, 956 F.3d 589 (9th Cir. 2020), which held that the "use of cookies to track and compile internet browsing histories" can invade users' privacy because it enables "access to a category of information otherwise unknowable and implicate[s] privacy concerns." *Id.* at 603. Defendant's other cases are also distinguishable because none involved an express representation like Defendant's cookie consent banner.

Here, Plaintiffs allege Defendant aided the Third Parties in their violation of the second and third clauses of Section 631(a). Compl. ¶¶ 141–155.[10] Plaintiffs allege that Defendant integrated the Website with code that enables the Third Parties to use cookies to "eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties." *Id.* ¶ 41. The Complaint includes extensive allegations describing how the cookies placed by the Third Parties transmit communications "in real time." *Id.* ¶¶ 4, 26, 66–73. Plaintiffs further demonstrate the plausibility of these allegations by including screenshots showing network traffic that occurs after a user rejects all cookies. *Id.* ¶¶ 37–38.

**a. Plaintiffs adequately allege Defendant's intent**

Defendant argues that "[b]ecause CIPA is a criminal statute, Plaintiffs must allege the necessary *scienter*—willful or intentional conduct." Dkt. 14 at 10. However, Courts from this Circuit consistently hold that only intent needs to be satisfied and it can be done by pleading that Defendant intentionally (i.e., not accidentally) "enable[d] a third party's eavesdropping on or interception of the communication." *See Doe v. Amgen, Inc.*, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. 2024); *Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955, at *4 (N.D. Cal. 2019). Courts find privacy allegations sufficient when plaintiff alleges that defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Motorola*, 2025 U.S. Dist. LEXIS 133836, at *29; *Haleon*, 815 F. Supp. 3d at 870. Here, Plaintiffs allege that Defendant fraudulently misrepresented to Website users that they could reject all cookies (Compl. ¶¶ 1, 30–34), but it nonetheless allowed Third Parties to intercept user communications (*id.* ¶¶ 37–41), and Defendant (not the Third Parties) installed the code on the Website which enabled such interception (*id.* ¶¶ 2, 22–29, 42–65).[11]

---

[10] Defendant argues that it is not directly liable to Plaintiff under the first three clauses of CIPA (ECF 16 at 6–9), but Plaintiff does not allege such direct liability and therefore responds only with respect to the theories actually pled.

[11] Defendant's interpretation of *Smith v. Yeti Coolers, L.L.C.* is contrary to the prevailing standard in this Circuit discussed above. 2024 U.S. Dist. LEXIS 194481, at *11 (N.D. Cal. 2024). The defendant in *Yeti*, like Defendants here, argued that the plaintiff must show the "'specific intent to commit the unlawful acts'" *Id.* But the plaintiff, by contrast, argued that CIPA did not require specific intent. *Id*. The court acknowledged that CIPA "does not necessarily incorporate the common law [intent] requirement for aiding and abetting . . . [but] other language in [CIPA's] fourth clause does require ***some*** level of knowledge and intent." *Id*. (emphasis added). Here, Plaintiffs allege more than "some" level of intent and

**b. Plaintiffs have alleged "In Transit"**

Defendant argues the "Complaint contains no factual allegations explaining how a third party acquitted, let alone read or attempted to read, any of Plaintiffs' 'communications' during transmission." Dkt. 14 at 11. As an initial matter, federal courts have questioned whether a plaintiff must plead "while" in-transit interception in the manner that Defendant asserts, given the California Supreme Court's decision in *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985): "Section 631(a) relates not just to messages, reports, or communications that are 'in transit,' but also to those that are 'being sent from, or received at any place within this state." *Mitchell v. Sonesta Int'l Hotels Corp*., 2024 U.S. Dist. LEXIS 186701, at *19–20 (C.D. Cal. 2024) (citing Cal. Penal Code § 631(a) and *Ribas*, 38 Cal. 3d at 359).

In any event, Plaintiffs detail how user communications are intercepted in real time while in transit from consumers' browsers to Defendant's Website via third-party cookies and corresponding software code. Compl. ¶¶ 3–4, 34–41, 46, 56, 65–73. Thus, the interception "occur[ed] contemporaneous with the sending or receipt of the message," in violation of CIPA. *See Valenzuela v. Keurig Green Mountain, Inc*., 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023), and allegations of real-time transmission are sufficient at the pleading stage *See Jackson v. LinkedIn Corp*., 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024).

**c. Plaintiffs allege "contents" were intercepted**

CIPA prohibits interception of "contents" of communications. "Contents" of communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Here, Plaintiffs allege they all visited the Website on several occasions, rejected all cookies, and browsed pages on the Website while seeking "information about Defendant's fast food menu." Compl. ¶¶ 84, 86, 93, 95, 102, 105. Plaintiff Coleman also input information several times "to place online orders for pickup from Defendant's restaurant locations." *Id.* ¶ 84. The cookies

knowledge (as explained above) because Defendant owns and operates the Website and installed the third-party resources which caused the Third Parties to track the Websites' users.

enable the Third Parties to collect a plethora of information, including browsing history, website interactions, user input data, URLs, email addresses, phone numbers, and more. *Id.* ¶¶ 45, 55. It is clear that such information qualifies as "contents" because it requires user input data and relates to the substance of such communications. *In re Zynga*, 750 F.3d at 1107; *Torrid*, Dkt. 35 at 2; *MyFitnessPal*, 824 F. Supp. 3d at 919.

Despite these allegations, Defendant argues Plaintiffs do not "identify 'contents' of 'communications' that were intercepted." Dkt. 14 at 11. But Defendant cannot so easily ignore and override Plaintiffs' allegations. *See Haleon*, 815 F. Supp. 3d at 871 (holding "contents" of communication were sufficiently alleged when plaintiff "identifies the information collected as 'the Website user's affirmative decisions, actions, choices [and] preferences,' including 'user input data' such as 'search queries, the user's name, age, gender, email address, location, and/or payment information'"); *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 859 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *Zynga*, 750 F.3d at 1108–09 (URL data can contain contents of communications); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *11 (N.D. Cal. Oct. 1, 2024) ("Descriptive URLs that reveal specific information about a user's queries reflect the 'contents' of a communication."); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content). Indeed, Defendant concedes that "website interactions, user input, shopping behavior, or referring URLs might involve content in some circumstances." Dkt. 14 at 12.[12]

The "contents" Defendant intercepted are not limited to what Plaintiff Coleman typed into the Website. "Several other courts in the Ninth Circuit have concluded that detailed URLs that reveal the specific document, product, or service that a user is viewing count as contents of

[12] Defendant's arguments that Plaintiffs' claims fail because they do not allege a predicate violation places form over function. While not laid out in a single element-by-element analysis, the Complaint clearly alleges CIPA violations by at least the Third Parties named. *See* Compl. ¶¶ 2–6, 36–65 (identifying unconsented wiretapping via cookies placed by Google, TikTok, and Snap); *id.* ¶¶ 3–4, 34–41 (Third parties made an intentional tap or unauthorized connection); *id.* ¶¶ 2–4, 23–37, 42–65 (with any line, cable, or instrument—i.e., cookies in internet communications); *id.* ¶¶ 1–6, 31–37 (willfully and without consent of all parties); *id.* ¶¶ 66–73 (reads or learns the contents of any communication while in transit); *id.* ¶¶ 42–65, 78–83 (uses any information so obtained).

communications." *Goldstein v. Rumble Inc.*, 2026 U.S. Dist. LEXIS 113489, at *11 (C.D. Cal. 2026) (collecting cases). Here, Plaintiffs allege that the cookies transmitted detailed information about the Website pages and products that Plaintiffs and other users viewed, including shopping behavior ("the products viewed or added to shopping carts"), interests and preferences ("the types of . . . content viewed, products searched for, or topics engaged with"), and website interactions ("[data on] which links, buttons, or ads on the Website . . . a user clicks"). Compl. ¶ 26. Google's own analytics cookies are capable of capturing exactly this kind of interaction: they enable a website owner to measure when a user "views an item," selects content, or "views their shopping cart." *Id.* ¶ 44. This is precisely the type of content Plaintiffs Parks and Colby allege was transmitted when they browsed Defendant's menu and promotions and clicked through the Website. *Id.* ¶¶ 93, 102. Thus, the contents of Plaintiffs' communications—the specific Website pages and products they viewed—were transmitted to Third Parties in violation of CIPA, regardless of whether a given Plaintiff also typed something into a form field.

**d. Plaintiffs Have Adequately Pled CIPA Section 638.51**

Defendant next argues "[t]he legislative history indicates that CIPA's provisions do not concern the analytical tools employed here and certainly are inapplicable in the context of Plaintiffs' allegations." Dkt. 14 at 13. However, this Court considered and rejected this argument in *Torrid* holding that the defendant "has not shown that CIPA's definition of pen registers is limited to telephone communications." *Torrid*, Dkt. 35 at 2 (citing *Dollar Tree*, 2025 U.S. Dist. LEXIS 204652, at *49–50).

Defendant next asserts that Plaintiffs do not identify "the specific dialing, routing, addressing, or signaling information for outgoing communications that were purportedly tracked." Dkt. 14 at 13. But Plaintiffs explain that signaling and addressing information is "captured and recorded by the Third Parties include[ing] TCP and/or UDP port numbers" from Plaintiffs devices and browsers. Compl. ¶ 74. Plaintiffs also explain signaling information (*id.* ¶ 75) and dialing information (*id.* ¶ 76).

**e. Plaintiffs Unjust Enrichment Claim May Proceed**

As Defendant concedes, this Court allows unjust enrichment claims to proceed past the

pleading stage. Dkt. 14 at 14. This case should be no different. *Torrid*, Dkt. 35 at 2; *Haleon*, 815 F. Supp. 3d at 875; *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *40–41.

**IV. THE COURT SHOULD STRIKE DEFENDANT'S DECLARATIONS**

Defendant supports its motion with the Declaration of Max Scholz and the Declaration of Bethany G. Lukitsch, which purport to establish facts about when Defendant's cookie banner changed and when Plaintiffs' counsel identified Plaintiff Colby as a claimant in pre-suit communications. *See* Dkt. 14 at 7–9 (citing Scholz Decl. ¶¶ 3–4, 6; Lukitsch Decl. ¶¶ 3–5). Both declarations, and Defendant's arguments premised on them, should be stricken under Federal Rule of Civil Procedure 12(f) because they rest on matters outside the four corners of the Complaint. Rule 12(f) permits striking any "redundant, immaterial, impertinent, or scandalous matter," and a motion to strike should be granted where, as here, the matter relied upon has no proper place in resolving a motion to dismiss. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994); *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). On a motion to dismiss, the Court's review is ordinarily limited to the contents of the Complaint, and Defendant cannot introduce extrinsic factual declarations to manufacture disputed factual premises for dismissal. The Scholz Declaration's assertions about the history of Defendant's cookie banner, and the Lukitsch Declaration's assertions about when Plaintiffs' counsel identified a named claimant, are precisely such extrinsic, disputed facts—neither is subject to judicial notice, and both are used to support factual arguments that contradict the well-pled allegations of the Complaint. Even considered on their own terms, neither declaration establishes the kind of "impenetrable defense" required to dismiss a claim as untimely at the pleading stage. *See Durnford*, 907 F.3d at 604 n.8.

**V. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court fully deny Defendant's motion to dismiss or, in the alternative, grant Plaintiffs leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court should grant leave to amend "if it appears at all possible that the plaintiff can correct the defect").

Dated: August 13, 2026

**GUTRIDE SAFIER LLP**

*/s/ Hayley A. Reynolds*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*