**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran B. Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
Andrew C. Burnquist (SBN 359076)
*aburnquist@bakerlaw.com*
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: 310.820.8800
Facsimile: 310.820.8859

*Attorneys for Defendant*
CKE RESTAURANTS HOLDINGS, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

MELVIN COLEMAN, MEGAN PARKS, and SUSAN COLBY, as individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

CKE RESTAURANTS INC.,

Defendant.

Case No.: 3:26-CV-04610-JD

[*Assigned to Hon. James Donato*]

**DEFENDANT CKE RESTAURANTS HOLDINGS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

| | |
|---|---|
| **Date:** | September 24, 2026 |
| **Time:** | 10:00 a.m. |
| **Dept.:** | Courtroom 11, 19th Floor |
| **Action Filed:** | May 15, 2026 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

I. INTRODUCTION ....... 1

II. PLAINTIFFS LACK ARTICLE III STANDING ....... 1

III. PLAINTIFFS' ALLEGATIONS FAIL TO SATISFY RULE 9(B) ....... 4

IV. PLAINTIFFS' COMMON LAW PRIVACY CLAIMS FAIL (COUNTS I AND II) ....... 6

V. PLAINTIFFS' WIRETAPPING (CIPA § 631) CLAIM FAILS (COUNT III) ....... 7

VI. PLAINTIFFS' PEN REGISTER CLAIM (CIPA § 638.51) FAILS (COUNT IV) ....... 9

VII. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS (COUNT VI) ....... 10

VIII. PLAINTIFFS' REQUEST TO STRIKE SHOULD BE DENIED ....... 10

IX. CONCLUSION ....... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrales et al. v. Reckitt Benckiser LLC*,
2026 WL 2212867 (N.D. Cal. July 31, 2026)....2

*Cherkin v. PowerSchool Holdings, Inc.*,
2025 WL 844378 (N.D. Cal. Mar. 17, 2025)....10

*Davis v. Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020)....4, 7

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025)....5, 7

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025)....5, 6

*Del Salto v. Auction.com, LLC*,
2026 WL 2519526 (N.D. Cal. Aug. 26, 2026)....3

*DellaSala v. Samba TV, Inc.*,
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025)....3

*Doe v. Amgen*,
2024 WL 3811251 (C.D. Cal. Aug. 13, 2024)....9

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025)....9

*Echeverria-Corzan v. Torrid LLC*,
No. 3:25-cv-06926-JD, Dkt. 35, slip op. (Feb. 26, 2026)....1, 3, 8, 9

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)....4, 6

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025).... *passim*

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025)....5, 9

*Hammerling v. Google*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)....7

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024)....8

*Hipolito v. Alliance Receivables Management, Inc.*, 2005 WL 1662137 (N.D. Cal. 2005) ....10

*Jones v. Ford Motor Co.*, 85 F. 4th 570 (9th Cir. 2023) ....1

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ....7

*Khamooshi v. Politico LLC*, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025)....3

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ....8

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ....10

*Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)....8

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ....5

*O'Neill v. Cal. Physicians' Serv.*, 2025 WL 3207416 (N.D. Cal. Nov. 17, 2025) ....6

*Oganyan v. Biolife Plasma Servs. L.P.*, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025)....3

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ....1, 2, 3, 5

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....9

*Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ....3

*Silver v. Stripe Inc.*, 2021 WL 3191752 (N.D. Cal. July 28, 2021)....7

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)....1, 3

*Variety Media, LLC v. Super. Ct.*, No. B350578, tentative op. (Aug. 21, 2026) ....9

*Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025)....8


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 6

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 9

*In re Zynga Priv. Litig.*,
750 F.3d at 1102, 1106 (9th Cir. 2014) .......... 7

**Statutes**

Cal. Penal Code § 631(a) .......... 8, 9

Cal. Penal Code § 637.2 .......... 9

**Other Authorities**

S.B. 690, 2025–2026 Reg. Sess. (Cal. Aug. 28, 2026) .......... 9

Fed. R. Civ. Proc. 9 .......... 1, 4, 5, 10

Fed. R. Civ. Proc. 12 .......... 10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

Plaintiffs' Opposition ("Opp.") fails to acknowledge the most basic and fundamental pleading deficiencies identified in CKE's Motion to Dismiss ("Motion")—the lack of any specific factual allegations of misrepresentations, harms, and their own experiences on CKE's Website. Plaintiffs rely on generalized and conclusory assertions and overstate the effect of *Echeverria-Corzan v. Torrid LLC*, No. 3:25-cv-06926-JD, which addressed different allegations and did not consider several of the independent grounds for dismissal presented here. Plaintiffs' allegations also fail to satisfy the Ninth Circuit's requirement that they identify "embarrassing, invasive, or otherwise private information" actually collected through the challenged website tracking. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). Although Plaintiffs characterize the cookie banner as deceptive, deception does not transform routinely collected commercial data into embarrassing, invasive, or private information. Absent such allegations, Plaintiffs cannot establish a concrete privacy injury and therefore lack Article III standing. The Opposition only underscores additional deficiencies, confirming that the Complaint fails to satisfy Rule 9(b)'s heightened pleading standard and, in any event, fails to state a viable claim against CKE. Accordingly, the Court should dismiss each cause of action with prejudice.

## II. PLAINTIFFS LACK ARTICLE III STANDING[1]

Plaintiffs first argue that the mere assertion of a violation of a statute (*e.g.*, CIPA) that was intended to codify "substantive privacy rights" is sufficient to confer standing. *See* Opp. at 3 (citing *Jones v. Ford Motor Co.*, 85 F. 4th 570, 574 (9th Cir. 2023)). But, as *Popa* recognized, this generalized approach was rejected by the Supreme Court in *TransUnion*.[2] *Popa*, 153 F.4th at 792 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *7 (N.D. Cal. Aug. 29, 2025) ("*Haleon*") ("[Popa] explained that *TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system.") (cleaned up). Thus, to determine whether a plaintiff has

[1] Plaintiffs mischaracterize CKE's standing argument as being limited to Plaintiffs' CIPA claims only. *See* Opp. at 3 n.1. But the Motion imposes no such limitation. To be clear, CKE challenges Plaintiffs' Article III standing to pursue this action in its entirety. Mot. at 4–7.

[2] The Ninth Circuit also recognized that despite its generalized statements in *Jones*, it *did* implicitly examine whether the plaintiffs there alleged a concrete injury. *Popa*, 153 F.4th at 793.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

alleged sufficient privacy injury, courts must analyze what data was ***actually collected*** from each plaintiff. *Popa*, 153 F.4th at 791.

As Plaintiffs concede, however, they allege only that they "visited and browsed several pages on the Website for information about Defendant's fast food menu," and, in Plaintiff Coleman's case, reviewed promotions and placed pickup orders. Opp. at 4 (citing Compl. ¶¶ 84, 93, 102). Plaintiffs argue these barebone allegations, along with a generalized list of what third-party cookies generally *can collect*—e.g., browsing history, user input data, interests and preferences, shopping behavior, identifiers, and geolocation data—is sufficient to establish a privacy injury. *Id.* But Plaintiffs never allege the facts *Popa* requires to show how their actual interactions with the Website could have resulted in the collection of any such information, much less how any collected information was "embarrassing, invasive, or otherwise private." *Popa*, 153 F.4th at 791. For example, Plaintiffs allege that "User Input Data" was collected, which apparently includes unidentified "search queries, the user's name, age, gender, email address, location, and/or payment information." Compl. ¶ 26. But Plaintiffs do not even allege that the Website contains a search bar, let alone that it requests a user's age or gender when placing an online order. These allegations underscore the disconnect between the hypothetical data Plaintiffs speculate ***could have*** been collected and the data they ***actually provided*** during their visits to the Website. *See Barrales et al. v. Reckitt Benckiser LLC*, 2026 WL 2212867, at *4 (N.D. Cal. July 31, 2026) (no standing where the complaint lacked details about the named plaintiffs' specific website experiences and relied instead on generalized allegations).

Notably, Plaintiffs' generalized allegations about their browsing activity closely track the allegations the Ninth Circuit rejected in *Popa*. To try and distinguish *Popa* and avoid its binding authority, Plaintiffs rely heavily on *Haleon*. *See* Opp. at 4:8-22. That reliance is misplaced. At a minimum, *Haleon* is readily distinguishable on its facts. There the court emphasized that the websites concerned healthcare products and services, making the information users entered "likely more sensitive" than the pet-store website activity at issue in *Popa*. *Haleon*, 2025 WL 2494368, at *7. No such concern exists here. CKE's public-facing restaurant website (like a pet store website) provides basic information about its menu, promotions, and online ordering. Unlike the healthcare-

focused websites in *Haleon*, it does not solicit or involve *any* medical information.

Nor does *Haleon*'s discussion of the underlying technology rescue Plaintiffs' claims. Plaintiffs emphasize that *Haleon* distinguished *Popa* in part based on the alleged capabilities of session-replay technology, rather than the types of information cookies may collect. Opp. at 4. But *Popa*—and indeed *TransUnion*—require more than allegations about what technology *could* have done. A plaintiff must allege an actual, concrete injury, not merely the possibility of one. *See TransUnion*, 594 U.S. at 437. Applying *TransUnion* to the internet privacy context, the Ninth Circuit confirmed that to establish a concrete privacy harm plaintiffs must allege facts showing that *their own* "embarrassing, invasive, or otherwise private information" was *actually collected*. *See Popa*, 153 F.4th at 791. To the extent *Haleon* or any other decision found a concrete injury based solely on generalized allegations regarding a technology's capabilities or the hypothetical collection of mundane data, that reasoning cannot be reconciled with *Popa* or *TransUnion*. When these decisions are applied to these allegations—as this Court must—they warrant dismissal for lack of injury.[3]

The Opposition heavily relies on this Court's order in *Echeverria-Corzan v. Torrid LLC*, No. 3:25-cv-06926-JD, Dkt. No. 35 (Feb. 26, 2026) to support Plaintiffs' standing argument. *See* Opp. at 1, 4. Respectfully, Plaintiffs read far more into *Torrid* than its brief two-page civil minute order could support. While this Court concluded in *Torrid* that the alleged disclosure of personal information bore a sufficiently close relationship to traditionally recognized privacy harms, it did not address whether generalized allegations about categories of information that tracking technologies potentially collect satisfy *Popa*'s standing requirements absent facts identifying what information was collected from each named plaintiff. *See Torrid*, Dkt. No. 35 at 1. And even if there was a promise not to collect, Plaintiffs do not allege an injury that was derived from that promise—

---

[3] *See Del Salto v. Auction.com, LLC*, 2026 WL 2519526, at *2 (N.D. Cal. Aug. 26, 2026); *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (dismissing the complaint for lack of concrete injury because the plaintiff failed to allege the collection of any "embarrassing, invasive, or otherwise private information"); *Oganyan v. Biolife Plasma Servs. L.P.*, 2025 WL 2979619, at *4 (E.D. Cal. Oct. 22, 2025) ("Plaintiffs also do not sufficiently allege any *actual* injury. Rather, they allege that the third-party trackers have the *capability* to use these pieces of information[.]"); *DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *5 (N.D. Cal. Oct. 30, 2025) (relying on *Popa* and dismissing privacy claim because plaintiffs "have not plausibly alleged a highly offensive violation of a privacy interest"); *see also Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) (dismissing CIPA claims for lack of Article III standing).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

e.g., the collection of embarrassing, invasive, or sensitive data.

Plaintiffs' other theories of injury likewise fail. Plaintiffs argue that their claims of loss of control and loss of value should be treated separately. *See* Opp. at 5. Whether treated as separate theories or not, both fail for the same reason: Plaintiffs do not allege facts showing that any data allegedly collected was personal, sensitive, private, or otherwise possessed independent economic value. Without such allegations, neither theory establishes a concrete injury. Nor do the pre-*Popa* cases cited in the Opposition support a different result. *See* Opp. at 5:7-17. To the contrary, those decisions underscore the deficiencies in Plaintiffs' pleading. Unlike the generalized and speculative allegations alleged here, the plaintiffs in those cases alleged the collection and/or disclosure of specific categories of private information and explained how the alleged conduct invaded their privacy interests. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (plaintiffs alleged the "widespread disclosure" of their "sensitive information," including "photographs, videos[,] religious preferences, posts, and even private one-on-one messages"); *see also Davis v. Facebook, Inc.*, 956 F.3d 589 (9th Cir. 2020) ("*In re Facebook*") (plaintiffs alleged an extensive and highly sensitive data collection by Facebook—including comprehensive browsing histories and communications—even after plaintiffs logged out of Facebook). By contrast, Plaintiffs here allege only that they visited the Website and encountered a cookie banner, without identifying any sensitive data collected. Such vague allegations cannot establish a concrete injury—regardless of Plaintiffs' theory.[4]

## III. PLAINTIFFS' ALLEGATIONS FAIL TO SATISFY RULE 9(B)

Plaintiffs incorrectly accuse CKE of attempting to "warp[] the pleading standard" through its timeliness arguments. *See* Opp. at 6. CKE does not argue in this Motion that Plaintiffs' claims are time-barred on the face of the Complaint. Rather, CKE argues that Plaintiffs have failed to plead the basic particulars of the alleged misconduct, including the "who, what, when, where, and how" of how they themselves were allegedly misled, deceived, or injured. Without those fundamental allegations, CKE cannot meaningfully evaluate the claims against it or formulate an adequate

[4] Plaintiffs conflate their loss-of-value theory of harm with their unjust enrichment claim. *See* Opp. at 5. Whether CKE was unjustly enriched (they were not) is a separate question. The relevant inquiry for standing is whether Plaintiffs have shown harm through the alleged loss of value of unpled, nonspecific personal information. They have not.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

response. *See* Mot. at 8-9. The declarations cited in the Motion serve only to illustrate why Rule 9(b)'s particularity requirement matters in this case. Rule 9(b) demands more than generalized allegations or hypothetical examples. It requires particularized facts showing when and how each named plaintiff encountered, understood, and relied upon the alleged misrepresentation. *See Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

Plaintiffs' reliance on *Haleon* and *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *1 (N.D. Cal. July 14, 2025) is unavailing. Neither decision addressed a website or cookie banner that materially changed during the relevant period or considered the changing nature of the websites at issue. Here, Plaintiffs expressly acknowledge that the Website and its cookie banner evolved over time. *See* Compl. ¶ 92 ("…Plaintiff Coleman does not know how the Website is programmed, ***which can change over time***.") (emph. added). That fact makes the timing of Plaintiffs' visit(s) critical. Plaintiffs allege only that they visited the Website at some unspecified point during a nearly four-year period. Because the viability and timeliness of Plaintiffs' claims depend on when those visits occurred, their failure to plead that fundamental fact underscores their failure to satisfy Rule 9(b)'s particularity requirement. *See de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *3 (N.D. Cal. Dec. 22, 2025) (dismissing complaint under Rule 9(b) where plaintiffs relied on broad, four-year allegations despite evolving cookie banners).[5] Furthermore, courts have criticized the *Motorola* decision given that it was issued ***before*** the Ninth Circuit handed down *Popa*. *See Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *3 & n.2 (C.D. Cal. Dec. 29, 2025).

Plaintiffs' arguments regarding the delayed discovery rule and/or fraudulent concealment are insufficient, perfunctory, and again, conclusory. *See* Opp. at 7. Plaintiffs do not identify ***any facts*** establishing the manner of their discovery or what they did during the years between their visits to the Website and their counsel's apparent investigation to uncover the alleged violation. Their conclusory allegations that they lacked technical expertise and remained unaware until their counsel informed them of the alleged conduct are insufficient as a matter of law. *See id.*; *O'Neill v.*

[5] Ms. Lukitsch's declaration regarding pre-suit communications further demonstrates why Rule 9(b) requires greater specificity here. As the declaration states (which Plaintiffs do not dispute) Plaintiff Colby retained her current counsel concerning these claims in October 2023, making her claims untimely. That timeliness defect underscores the importance of requiring Plaintiffs to plead precisely when they discovered their alleged injuries and the facts surrounding their claims.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Cal. Physicians' Serv.*, 2025 WL 3207416, at *6 (N.D. Cal. Nov. 17, 2025) ("Conclusory allegations of diligence cannot suffice."); *de Ayora*, 2026 WL 1653483, at *4 ("[Plaintiff] does not plead any facts showing that he acted diligently in trying to uncover the facts which gave rise to his claim. [The] mere assertion of diligence in opposition…is insufficient."). Moreover, Plaintiffs' theory is particularly implausible because the Complaint itself alleges that website activity ***can be*** analyzed through ordinary tools readily available to internet users. *See* Compl. ¶ 92 (referencing Chrome Developer Tools). Thus, to the extent they are even considered, Plaintiffs' attempt to assert the delayed discovery rule and/or fraudulent concealment fail.

## IV. PLAINTIFFS' COMMON LAW PRIVACY CLAIMS FAIL (COUNTS I AND II)

Again, the Opposition sidesteps the central defect in Plaintiffs' common law privacy claims—they do not allege any facts showing that CKE collected ***personal or sensitive data*** from them during their visits to the Website. Under California law, an invasion of privacy claim demands a high threshold—one that cannot be met, even at the initial pleading stage, without concrete allegations of sensitive data collection. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) ("The California Constitution sets a 'high bar' for establishing an invasion of privacy claim.") (cit. omitted). Instead of alleging what was ***actually collected*** from each Plaintiff and their privacy expectation for each, Plaintiffs generally assert that they had a reasonable expectation of privacy in "large swaths of their data and communications," which CKE allegedly helped third parties collect after "***specifically representing***" that certain data would not be shared. *See* Opp. at 9. But an alleged misstatement in a cookie banner does not, by itself, create a *per se* reasonable expectation of privacy. And it certainly does not create an expectation of privacy in *all data* associated with a website visit, such as routine header information and information users have already shared with third parties, such as Google or Meta, through their own accounts and interactions with other websites. Even in *In re Facebook*, another pre-*Popa* decision, the Ninth Circuit emphasized that the actionable privacy violation stemmed from the ***extraordinary volume and sensitive nature of the data collected***, not merely from an alleged misstatement in a privacy disclosure. 956 F.3d at 602-05; *see also Blackhawk Network*, 2026 WL 925028, at *6, *13 ("misrepresentation alone" not "enough to meet the highly offensive bar").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Even if Plaintiffs could establish that the alleged representations created a reasonable expectation of privacy in their unspecified, non-record browsing data (it did not), their common law privacy claims still fail because the collection of general browsing data is not "highly offensive" as a matter of law. *See Hammerling v. Google*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Unable to identify the collection of any personal or sensitive information, such as health or financial data, Plaintiffs instead argue that CKE's alleged intrusion was highly offensive because it participated in the "mass accumulation" of their data by others. Opp. at 10. But the allegations cited in the Opposition do not concern the large-scale collection or accumulation of data ***by CKE***. To the extent they plausibly allege anything, they describe the general collection and aggregation of data by third parties. *See id.* (citing Compl. ¶¶ 65, 124). That distinction is dispositive.

Moreover, the case law Plaintiffs rely upon involves allegations that the ***defendant itself*** engaged in extensive data collection practices. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 935 (N.D. Cal. 2023) (challenging Oracle's "extensive data brokering business"); *Silver v. Stripe Inc.*, 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) (alleging that Stripe collected comprehensive information about plaintiffs). Here, by contrast, Plaintiffs allege no facts showing that CKE engaged in the type of broad, invasive tracking at issue in those cases. Because Plaintiffs have not plausibly alleged that CKE's conduct was highly offensive to a reasonable person, their common-law privacy claims fail. *See Dawidzik*, 2025 WL 3786963 at *5.

## V. PLAINTIFFS' WIRETAPPING (CIPA § 631) CLAIM FAILS (COUNT III)

The arguments advanced in Plaintiffs' Opposition miss the point.

*First,* Plaintiffs argue they sufficiently alleged interception of "contents" of communications when they browsed pages on the Website while seeking "information about Defendant's fast food menu." *See* Opp. at 12-14. But browsing webpages or clicking links is not the same as sending a communication whose contents could be intercepted. *See In re Zynga Priv. Litig.*, 750 F.3d at 1102, 1106 (9th Cir. 2014) (URLs sent when a user clicks on a link are not considered "contents" of a communication under the Federal Wiretap Act). Indeed, while courts have found that some "user input data"—such as search queries, names, demographic details, email addresses, locations, or payment information—could qualify as "content" under Section 631(a), those cases are inapplicable

because Plaintiffs do not allege that ***they personally*** entered any such information on CKE's Website. Absent allegations about their own user input communications, their claims fail as a matter of law. *See, e.g., Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) (Pitts, J.) (collecting cases). Plaintiff Coleman does plead a bit more—that he input information "to place online orders for pickup," *see* Opp. at 12 (citing Compl. ¶ 82), but he does not identify what private information he input, where he entered it, or what, if anything, was collected.[6]

*Second,* even if Plaintiffs did plead the contents of a communication (they did not), they otherwise fail to plausibly allege that any communication was intercepted while "in transit." *See Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 878 (9th Cir. 2002). Plaintiffs' argument that an interception need not occur while the transmission is ongoing, *see* Opp. at 12 (citing *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024)), directly contradicts the statute's text. *See* Cal. Penal Code § 631(a) (prohibiting a defendant from "willfully…read[ing], or attempt[ing] to read, or to learn the content…***while the same is in transit***.") (emph. added). Moreover, while the *Mitchell* court suggested that the word "while" was not a key focus of the California Supreme Court's analysis in *Ribas*, it nonetheless deemed the "in-transit" element met because the plaintiffs alleged that their communications were duplicated and sent to third parties at *the same moment* they were transmitted to the website. *See Mitchell*, 2024 WL 4471772, at *8. Here, the Complaint alleges no facts explaining how any third party acquired—much less read or learned—Plaintiffs' "communications," if any, in real time. Allegations about how third-party systems may process data in the abstract are not a substitute for facts alleging a contemporaneous interception of Plaintiffs' own content-bearing communications. *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024).

*Finally*, Plaintiffs fail to allege sufficient facts to show CKE intended to aid and abet a third party's illegal wiretapping of Plaintiffs' communications. Plaintiffs distort *Doe v. Amgen*, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024) and *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D.

[6] Nor does *Torrid* compel a different conclusion. The plaintiff there was found to have plausibly alleged that third parties obtained her "user input data" in real time. *Torrid*, Dkt. No. 35 at 2. Plaintiffs here do not identify the content of any particular communication allegedly acquired from Parks or Colby, and Coleman does not identify what information he entered or allege facts showing that any third party acquired that information contemporaneously.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Cal. Oct. 23, 2019) to suggest that allegations of intentional enabling of third-party cookies suffice to establish the intent requirement. *See* Opp. at 11. But these cases never held that the intent element is satisfied by such conclusory allegations—they never addressed the issue. *See Amgen*, 2024 WL 3811251, at *2 (finding that enabling third-party misconduct *could* state a claim under § 631's fourth prong without analyzing whether requisite criminal intent was established); *Revitch*, 2019 WL 5485330, at *2 (similar). *Haleon* and *Motorola* are likewise inapposite, as the court in both relied on *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880 (S.D. Cal. 2025) without considering that *Zarif* did not involve aiding and abetting liability under Section 631(a) and hence does not provide clear guidance as to what intent is required in this context. *See Haleon*, 815 F. Supp. 3d at 870; *Motorola,* 2025 WL 1939957, at *11.

## VI. PLAINTIFFS' PEN REGISTER CLAIM (CIPA § 638.51) FAILS (COUNT IV)

For the reasons stated in its Motion, Section 638.51 does not extend to the website-tracking technology alleged here. Mot. at 12–14; *see Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025) ("The language of CIPA is a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change.").[7] Mot. at 13–14. Their generic allegations concerning ports, headers, and connection metadata, and cursory explanations of signaling information and dialing information generally, Opp. at 14, do not identify what information was recorded. Compl. ¶¶ 74–77.

Furthermore, on August 28, 2026, Senate Bill 690 ("SB 690") passed both the California Assembly and Senate unanimously and now awaits the Governor's signature. See S.B. 690, 2025–2026 Reg. Sess. (Cal. Aug. 28, 2026) (passed Assembly 66–0; Senate concurred 40–0). Once enacted, SB 690 will amend California Penal Code § 637.2 to eliminate private enforcement of claims arising under CIPA's pen register and trap-and-trace provision, § 638.51, when those claims are based on conduct occurring through a website, online application, or mobile application. Instead, only the California Attorney General will have authority to pursue such claims. Importantly, the

[7] In *Torrid*, the Court concluded the defendant did not show CIPA's definition of a pen register is limited to telephone communications. *Torrid*, Dkt. No. 35 at 2. CKE preserves its statutory argument but emphasizes that Plaintiffs' claim independently fails because they do not identify the specific dialing, routing, addressing, or signaling information allegedly recorded from any outgoing communication by any named Plaintiff. *See Variety Media, LLC v. Super. Ct.*, No. B350578, tentative op. (Aug. 21, 2026).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

legislation applies retroactively. The amendment expressly extends to any pending action filed within two years before the statute's operative date, which would encompass Plaintiffs' CIPA trap-and-trace claim. Accordingly, when SB 690 becomes law, likely in January 2027, Plaintiffs' claim under § 638.51 will be barred and must be dismissed.

## VII. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS (COUNT VI)

Plaintiffs mischaracterize that CKE "concedes" that "this Court allows unjust enrichment claims to proceed past the pleading stage." *See* Opp. at 14–15. Rather, CKE argues that *even if* construed as a quasi-contract claim for restitution—the ***only*** way an unjust enrichment claim can even be pled as a claim—Plaintiffs fail to allege the specific benefit received and unjustly retained by CKE. *See Cherkin v. PowerSchool Holdings, Inc.*, 2025 WL 844378, at *7 (N.D. Cal. Mar. 17, 2025). Nor do Plaintiffs address CKE's argument that restitution cannot be claimed absent a sufficiently pled actionable misrepresentation. *See* Mot. at 14–15.

## VIII. PLAINTIFFS' REQUEST TO STRIKE SHOULD BE DENIED

Plaintiffs' request to strike the declarations of Max Scholz and Bethany Lukitsch under Rule 12(f) is procedurally improper since that rule only applies to "pleadings" and not motions. *See Hipolito v. Alliance Receivables Management, Inc.*, 2005 WL 1662137 (N.D. Cal. 2005) ("Motions and supporting declarations are not 'pleadings' and therefore are not subject to rule 12(f)"). Regardless, the declarations are properly considered in a factual challenge to standing. *Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014). And, to the extent CKE mentioned the declarations in its Rule 9(b) argument, it was solely for illustrating why Plaintiffs fail to clear Rule 9(b)'s hurdle. Mot. at 8–9. The Court should deny Plaintiffs' request to strike.

## IX. CONCLUSION

For the reasons explained above, and in the Motion, CKE respectfully requests that the Court dismiss the Complaint in its entirety with prejudice.

/ / /

/ / /

/ / /

/ / /

Dated: September 3, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
Bethany G. Lukitsch
Kamran B. Ahmadian
Andrew C. Burnquist

*Attorneys for Defendant*
CKE RESTAURANTS HOLDINGS, INC.